UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No.  3:24-cr-144-TJC-LLL
18 U.S.C. § 371

NOEL GARY BERES

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**

A.  Introduction

At all times material to this Information:

1.     Medicare was a federally funded health care benefit program that provided medical coverage for persons age 65 and over and for persons under age 65 who were disabled.

2.     Medicare was a "health care benefit program" as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f).

3.     Medicare was divided into four parts: A, B, C, and D.  Part B provided supplementary medical insurance benefits that covered certain doctors' services, outpatient care, preventive services, and medical supplies.

4.     Each Medicare beneficiary was identified with a unique beneficiary identifier number ("BIN").  These BINs were used, among other things, to determine

a beneficiary's eligibility for Medicare benefits, and to submit claims to Medicare seeking reimbursement for covered benefits, items, and services. Two types of BINs established under Title 42, United States Code, Chapter 7, subsection XVIII, were Health Insurance Claim Numbers ("HICNs") and Medicare Beneficiary Identifiers ("MBIs").

5.     HICNs were typically comprised of the beneficiary's social security number and often included one or more additional letters. In 2015, Congress passed the Medicare Access and CHIP Reauthorization Act ("MACRA"), which mandated the phase-out of the use of social security numbers in the assignment of BINs.

6.     From April 4, 2022, until the declared end of the COVID-19 public health emergency on May 11, 2023, Medicare covered and paid for OTC ("over the counter," i.e., not prescribed or ordered by a physician) rapid antigen COVID-19 tests for beneficiaries with Medicare Part B, at no cost to the beneficiaries. However, Medicare regulations provided that Medicare would pay for such tests only if a beneficiary requested the tests.

7.     SWL Services LLC was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida, that was enrolled with Medicare as a participating provider that would provide clinical laboratory services to Medicare beneficiaries.

8.     The defendant, NOEL GARY BERES, was the owner and operator of Advanced Marketing Solutions USA, which was incorporated on or about May 25, 2021, and which had its principal place of business in Aventura, Florida.

B.  Charge

Beginning in or about April 2023 and continuing through in or about June 2023, in the Middle District of Florida, and elsewhere, the defendant,

NOEL GARY BERES,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the United States Attorney, to commit an offense against the United States, that is:

(1)     to knowingly and willfully solicit and receive remuneration, by kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), and

(2)     without lawful authority, to knowingly and willfully, purchase, sell, distribute, and arrange for the purchase, sale, and distribution of beneficiary identification numbers under Title 42, United States Code,

3

Chapter 7, subsection XVIII, that is, HICNs and MBIs, in violation of 42 U.S.C. § 1320a-7b(b)(4).

## C.   **Manner and Means**

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1.      The defendant purchased Medicare beneficiary identifying information from a co-conspirator.

2.      The defendant contacted, and was contacted by, individuals to whom he offered to sell Medicare beneficiary identifying information and he entered into agreements with these co-conspirators for them to purchase lists of such identifying information to facilitate the co-conspirators' shipping of COVID-19 tests to the beneficiaries and billing Medicare for the tests.

3.      The co-conspirators shipped COVID-19 tests to the identified beneficiaries, none of whom had requested the tests.

4.      The co-conspirators billed Medicare for the tests and then paid the defendant a set dollar amount per beneficiary, but they paid this amount only if a claim submitted on behalf of a beneficiary was reimbursed by Medicare.

5.      The defendant paid a portion of the amount he received to the co-conspirator from whom he had purchased the Medicare beneficiary identifying information.

6.     The defendant's actions caused the submission of approximately 68,560 false and fraudulent claims to Medicare, which resulted in reimbursements from Medicare for that period totaling approximately $6,447,000.

### D.     Overt Acts

In furtherance of the conspiracy and to effectuate the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere:

1.     In approximately April 2023, the defendant entered into an agreement with the owners and operators of SWL Services LLC to sell Medicare beneficiary identifying information to them for $15 per beneficiary.

2.     On or about May 10, 2023, SWL Services paid the defendant, through his company, Advanced Marketing Solutions, a total of approximately $72,750 for Medicare beneficiary identifying information that he had sold to SWL Services.

3.     On or about May 11, 2023, SWL Services paid the defendant, through his company, Advanced Marketing Solutions, a total of approximately $58,200 for Medicare beneficiary identifying information that he had sold to SWL Services.

All in violation of 18 U.S.C. § 371.

### FORFEITURE

1.     The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2.  Upon conviction of a conspiracy to violate 42 U.S.C. § 1320a-7b(b)(1) and/or 42 U.S.C. § 1320a-7b(b)(4), in violation of 18 U.S.C. § 371, the defendant, NOEL GARY BERES, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.  The property to be forfeited includes, but is not limited to, an order of forfeiture of approximately $1,028,450, which represents the proceeds the defendant obtained from the offense.

4.  If any of the property described above, as a result of any act or omission of a defendant:

     a.  cannot be located upon the exercise of due diligence;

     b.  has been transferred or sold to, or deposited with, a third party;

     c.  has been placed beyond the jurisdiction of the court;

     d.  has been substantially diminished in value; or

     e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

ROGER B. HANDBERG
United States Attorney

By: _____

ARNOLD B. CORSMEIER
Assistant United States Attorney

By: _____

MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

7